## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Master File No. 00-1334-MD-MORENO
Tag-Along Case No. 02-22027-CIV-MORENO

IN RE: MANAGED CARE LITIGATION

_____,

THE AMERICAN DENTAL ASSOCIATION,
on its own behalf and in an associational
capacity on behalf of its members, and
FRANK S. ARNOLD, D.M.D., DAVID W.
RICHARDS, D.D.C., and JAMES SWANSON,
D.D.S., individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

WELLPOINT HEALTH NETWORK INC. and
BLUE CROSS OF CALIFORNIA,

        Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

This matter is before the Court on Defendants' Motion to Dismiss the Complaint

[D.E. 18]. The Court has reviewed the motion, Plaintiffs' response, the reply, related

authorities submitted by the parties, and the record in the case. For the foregoing

reasons the motion to dismiss should be granted in part and denied in part.

### I.   BACKGROUND

This is a tag-along case transferred by the MDL panel from the Northern

District of Illinois to this Court due to its common questions of law and fact with other

cases involved in the *In Re: Managed Care Litigation*. Plaintiffs are three individual dentists plus the American Dental Association ("ADA") that is suing on its own behalf and in an associational capacity on behalf of its members. Defendants, WellPoint Health Networks, Inc. and its subsidiary Blue Cross of California ("WellPoint"), administer group health plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs allege to have provided dental services as "out of network" providers to members of health plans administered by WellPoint and governed by ERISA. These services were performed pursuant to the terms and conditions of the subscriber agreements. Under these agreements, WellPoint was obligated to pay its subscribers or their "out of network" providers the actual amount these providers charged for their services, assuming the annual deductible was met, minus any applicable co-payment amount paid by the subscriber. According to Plaintiffs, the only instance in which WellPoint was excused from paying the actual amount charged by the "out of network" provider was where it demonstrated, using a valid data, that the treating dentist's actual charges "exceed[ed] the customary and reasonable allowance" for the particular procedure in question. Plaintiffs further allege that WellPoint used and continues to use a flawed and inadequate database developed by Health Insurance Association of America ("HIAA" or "Ingenix") in making its benefits calculation for "out of network" providers under all of its administered plans.

In their three-count Class Action Complaint, Plaintiffs allege that (1) WellPoint violated ERISA  by underpaying its subscriber-patients for the services rendered by

the "out of network" dentists, and (2) WellPoint's statements to its subscribers regarding the excessive costs of "out of network" services constituted trade libel and tortious interference with contractual relations on the Plaintiff class under state law. Plaintiffs seek monetary damages as well as injunctive and declaratory relief.

The pending motion to dismiss raises five arguments: (i) count I should be dismissed because Plaintiffs failed to exhaust administrative remedies pursuant to ERISA requirements [D.E. 18 at 6]; (ii) Plaintiffs' state law claims are preempted by ERISA [D.E. 18 at 10]; (iii) Plaintiff's state law claims for trade libel and tortious interference with contract and business expectancies failed to allege the elements necessary to state a cause of action [D.E. 18 at 15]; (iv) claims of the ADA should be dismissed due to its lack of standing to proceed either on its own behalf or on behalf of its members [D.E. 18 at 24]; and (v) the entire complaint should be dismissed because Plaintiffs have failed to plead facts in sufficient detail to comply with Fed. R. Civ. P. 8(a)(2) [D.E. 18 at 28].

Plaintiffs oppose the motion responding that: (i) the exhaustion requirement under ERISA is satisfied or, in alternative, the exhaustion requirement is excused due to the clear and positive showing of futility [D.E. 22 at 3]; (ii) the allegations satisfy the notice pleading requirements under Fed. R. Civ. P. 8(a)(2) [D.E. 22 at 14]; (iii) Plaintiffs' tort claims are not subject to preemption under ERISA [D.E. 22 at 17]; (iv) Plaintiffs properly state a cause of action for trade libel and tortious interference with contract and business expectancies under applicable state law [D.E. 22 at 25]; and (v) the ADA has both the individual and representational standing to pursue claims on behalf of its members [D.E. 22 at 30].

## II.   ANALYSIS

The purpose of a motion under Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting *Twombley*, 127 S.Ct. at 1964-65).

The Court must "view all the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Berry,* 497 F. Supp. 2d at 1364 (citing *Marshall Cty. Bd. of Educ.,* 992 F.2d at 1174). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*,

127 S.Ct. At 1965 (internal citation omitted).

### A.      *ERISA'S Exhaustion Requirement*

Count I of the Complaint alleges breach of contract and seeks redress under ERISA, 29 U.S.C. § 1001 *et seq.*  ERISA requires plaintiffs to exhaust available administrative remedies under their ERISA-governed plans before they are allowed to bring suit in a federal court.  *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).  This requirement, however, may be excused if the court determines that exhaustion would be futile or the remedy offered would be inadequate.  *Springer*, 908 F.2d at 899.  The decision whether an exception should be applied to the exhaustion requirement is committed to the sound discretion of the trial court and will not be overturned absent abuse of discretion.  *Id.*  Additionally, the Eleventh Circuit requires plaintiff to affirmatively plead exhaustion on the face of the complaint.  *See Byrd*, 961 F.2d 160-61 (dismissal of complaint upheld where plaintiff failed to plead exhaustion); *cf. Walker v. Fortis Benefits Ins. Co.*, 2005 WL 3157578, *5 (C.D. Ill. Nov. 23, 2005) ("Plaintiff's silence does not compel the conclusion that he failed to exhaust, or that no exceptions to the exhaustion rule apply").

The Complaint alleges that Dr. Richards, one of the plaintiffs in this case, "appealed WellPoint's reduction of reimbursements" and "requested all back-up or supporting documentation." [Class Action Complaint D.E. 2 ¶ 29]. WellPoint, however, refused to provide such documents and informed Dr. Richards that "payments are made in accordance with the HIAA fee schedule." *Id.*  Furthermore, WellPoint did not

instruct Dr. Richards to follow any additional appeals procedure, other than referring him to its customer service department's 800 number.  Based on these allegations, Plaintiffs concluded that "Dr. Richards has exhausted all potential internal procedures and grievance mechanisms." *Id.*

Failure to exhaust administrative remedies is ordinarily an affirmative defense. *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006).  Plaintiffs are not required to negate an affirmative defense in their complaint.  *Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).  Instead, the law in this Circuit only mandates the plaintiff to plea exhaustion beyond mere "all conditions precedent were satisfied" statement.  *See Variety Children's Hospital v. Century Medical Health Plan, Inc.*, 57 F.3d 1040, 1042 n. 2 (11th Cir. 1995) (allegations that a plaintiff has complied with "all conditions precedent" or that "such conditions have been waived or excused" does not fulfil the exhaustion requirement under ERISA).

Plaintiffs here allege that: (1) they have filed an appeal with WellPoint; (2) the appeal was denied; and (3) WellPoint did not instruct them to file any additional appeals.  At this stage of the proceedings these allegations are sufficient.  It is simply too early to determine whether the allegations raised in the Complaint, if true, are sufficient to satisfy the exhaustion of administrative remedies under ERISA.  It may well be that the steps taken by Dr. Richards, as alleged in the Complaint, were all that was required under the controlling subscribers agreement.  Alternatively, if further discovery reveals that the terms of the plan mandated additional administrative steps, Defendants may raise this issue again as an affirmative defense on a motion for summary judgment.

Furthermore, although the remaining two named Plaintiffs conceded to not filing any administrative appeals, the Complaint sufficiently pleads that pursuit of such remedies would be futile. Naturally, if Dr. Richard's alleged appeal and challenge to the accuracy of the Ingenix database was all that was required under the controlling plan and WellPoint's response constituted a denial of his claim, any attempts to file additional appeals by any of the Class Plaintiffs would indeed be futile. However, if further discovery reveals that Dr. Richard failed to follow proper administrative appeals procedures under the plan, the remaining Plaintiffs' excuse for not filing such appeals will fail on a motion for summary judgment.

Defendants contend that the allegations in the Complaint as to exhaustion are patently insufficient, citing this Court's decision in *In re Managed Care Litigation*, 185 F. Supp. 2d 1310, 1332 (S.D. Fla. 2001). Defendants argue that the Complaint fails to allege that Dr. Richards conducted a good faith inquiry into the applicability or adequacy of the administrative proceedings.

*In re Managed Care Litigation*, however, does not help Defendants' contention. Plaintiffs in that case *conceded* that they had failed to pursue any administrative procedures. Instead, plaintiffs claimed that pursuit of such remedies would be futile due to various factors. The Court concluded that plaintiffs' allegations in their complaint did not "suggest that the plaintiffs conducted a good faith inquiry into the applicability or adequacy" of the administrative proceedings. *Id.* The Complaint here alleges that Dr. Richards has indeed filed an appeal with WellPoint. Furthermore, WellPoint's response to that appeal did not indicate the existence of any additional appeals procedures that Dr. Richards was obligated to follow.

Therefore, the Court finds that the allegations raised in the Complaint sufficiently satisfy the exhaustion of administrative remedies pleading requirement. Accordingly, Defendants' Motion to Dismiss Count I of the Complaint should be Denied.

### B.      *ERISA Preemption of State Law Claims*

Counts II and III of the Complaint assert state law claims for trade libel and tortious interference with contractual relations and existing and prospective business expectancies.    These claims allegedly arise out of statements that WellPoint communicated to its subscribers regarding the services provided by "out of network" providers.   Specifically, Plaintiffs allege that WellPoint's statement that the "out of network" providers's services "exceed[ed] the customary and reasonable allowance" conveyed information that was harmful to the Plaintiff class reputation. [Class Action Complaint D.E. 2 ¶ 44].

ERISA was enacted in order to create a consistent and coherent nationwide framework for regulating employee benefit plans.  *See generally Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 99 (1983).  Consequently, it expressly displaces or preempts, the application of state laws that bear a relation to the matters addressed in ERISA. It is now a clearly settled law that ERISA preemption comes in two varieties.

On one hand, Section 514(a) preemption, also called "defensive" or "conflict preemption," holds that ERISA "shall supersede any all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  Defensive preemption applies broadly to any claim that "relates to" an ERISA plan, and may be pled as "an affirmative defense to state law claims." *In re Managed Care Litigation*,

298 F. Supp. 2d at 1288 (citing *Butero,* 174 F.3d at 1211). Defensive preemption, however, does not have jurisdictional implications. In other words, it does not divest a state court of jurisdiction to hear any claim that "relates" to an ERISA plan and does not automatically give rise to federal subject matter jurisdiction warranting removal. *See id.*

On the other hand, Section 502(a) preemption, also called "complete or "super-preemption," does have jurisdictional implications, but only for a narrow band of ERISA claims. The ERISA statute creates exclusive federal jurisdiction (without regard to the diverse citizenship of the parties or the amount in controversy) over any civil action brought by an ERISA participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §§ 1132(a), (e)-(f).

Defendants argue that Counts II and III are subject to both "defensive" and "complete" preemption. We agree that the state law tort claims asserted by Plaintiffs are preempted by Section 514(a). As no jurisdictional implications exist[1], we need not address whether state law claims for trade libel and tortious interference with contractual relations are subject to complete preemption under Section 502(a).

Section 514(a) provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). The provision serves as a federal defense to a

---

[1] Plaintiffs have asserted a federal claim under ERISA in Count I.

plaintiff's state law clams when those claims relate to an employee benefit plan

governed by ERISA.  The key in determining the scope of Section 514 preemption is

the meaning of "relate to."  A state law having a "connection with or reference to" an

ERISA-governed plan is preempted by ERISA Section 514(a).  *California Division of*

*Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 322 (1997).  If a

state law "does not affect the structure, administration, or the type of benefits provided

by an ERISA plan, the mere fact that the [law] has some economic impact on the plan

does not require that the [law] to be invalidated."  *Shaw*, 463 U.S. at 100.  The

Eleventh Circuit finds that "[a] party's state law claim 'relates to' an ERISA benefit

plan for purposes of ERISA preemption whenever the alleged conduct at issue is

intertwined with the refusal to pay benefits." *Garren v. John Hancock Mutual Life Ins.*

*Co.*, 114 F.3d 186, 187 (11th Cir. 1997).  Thus, "where state law claims of fraud and

misrepresentation are based upon the failure of a covered plan to pay benefits," the

state law claims have nexus with an ERISA plan and its benefits system.  *Variety*

*Children's Hospital, Inc.*, 57 F.3d at 1042.

In order to determine whether Counts II and III sufficiently "relate to" ERISA

plans to trigger preemption under Section 514(a), it is necessary to analyze the

allegations in the Complaint.  First, Plaintiffs assert that the alleged tortious

statements were made in the course of communication between Defendants plan

administrators and their subscribers. [Class Action Complaint D.E. 2 ¶ 4].  Second,

Plaintiffs concede that Defendants were allowed to pay less than the "out of network"

provider's actual charges when they exceeded the "customary and reasonable

allowance for particular procedure in question." [Class Action Complaint D.E. ¶ 3].

Third, Plaintiffs assert that Defendants' calculation of "customary and reasonable allowance" is flawed and based on an inaccurate data. [Class Action Complaint D.E. ¶ 30-33]. Finally, Plaintiffs concede that Defendants' obligation to pay for "out of network" provider's services stemmed from their contractual relation with the beneficiaries. [Class Action Complaint D.E. ¶ 2].

Based on these allegations, it is rather clear that Plaintiffs' tort claims by necessity require the interpretation of the parties' obligation under the controlling subscriber agreement. In other words, Defendants' alleged tortious statements must be read in conjuncture with that agreement. Plaintiffs can only prevail if Defendants' calculation, which gave rise to the tortious statements, was not "customary and reasonable" as defined under the contract. *See, e.g., Thomas v. Telemecanique, Inc.*, 768 F. Supp. 503, 506 (D. Md. 1991) (defamation claim preempted by ERISA because consideration of such claim would "necessarily involve an examination of the employee benefit plan" because "the entire issue is whether or not [Plaintiff] had a right to receive benefits, and whether her benefits were improperly terminated"). Therefore, Plaintiff's state law tort claims in Counts II and III have a definite connection with the ERISA plans because they arise from the alleged wrongful calculation of "customary and reasonable allowance" under the terms of such plans.

Additionally, as Plaintiffs state in their Complaint, the tortious statements were clearly made between a plan administrator and its beneficiary in connection with an ERISA plan. Thus, Plaintiffs' tort claims are challenging the administrator's handling, review, and disposition of a request for coverage under an ERISA plan.

In a factually analogous case, *Mayeaux v. Louisiana Health Services &*

*Indemnity Co.*, 376 F.3d 420 (5th Cir. 2004), the Fifth Circuit considered claims by a patient and her treating physician against an insurer arising from the insurer's denial of coverage for the costs of the provider's proposed treatment of the patient. The insurer concluded that the proposed treatment was either "experimental" or "investigational." *Id.* at 423. The physician asserted claims against the insurer for, *inter alia*, defamation and intentional interference with contracts. *Id.* at 432. The Court, however, found these claims preempted by ERISA because they arose from the manner in which the insurer determined not to cover the patient's treatment and the subsequent notification to patients that the specific treatment would not be covered under the plan. *Id.* at 433. According to the Fifth Circuit, "[t]o allow a medical practitioner to sue for defamation and intentional interference when an ERISA plan administrator decides that the plan does not cover a particular medical treatment for particular participant or beneficiary would undoubtedly jeopardize the relationships among the traditional ERISA entities." *Id.* The Court had "no difficulty holding that the existence of an ERISA plan [was] a critical factor in establishing liability for the state law causes of action asserted by" the provider. *Id.* Thus, conflict preemption barred the state law claims.

In their memorandum in opposition to dismissal, Plaintiffs cite numerous cases suggesting that their tort claims are independent causes of action not "related to" any ERISA plan, thus not preempted by Section 514(a). The cited caselaw, however, has no bearing on this case. Instead, it only supports a proposition that ERISA does not preempt independent causes of action by providers against plan administrators *if they arose independently from an ERISA plan.*

For example, in *In re Managed Care Litigation*, 298 F. Supp. 2d at 1293, this Court allowed third-party providers to assert breach of constructive contract and unjust enrichment claims against the insurer. We found no preemption by Section 514(a) because the claims were "not based upon the relationship between the insured and insurer but upon Defendants' solicitation and knowing acceptance of the Providers' services." *Id.*

The remaining cited cases are similarly distinguishable. *See Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1533 (11th Cir.1994) (third party provider's negligent misrepresentation claim against insurer not preempted because such cause of action "affects the relationship between the principal ERISA entities at best only indirectly"); *Memorial Hospital System v. Northbrook Life Insurance Co.*, 904 F.2d 236 (5th Cir. 1990) (provider's claim against insurer for deceptive practice under Texas Insurance Code for misrepresentation of coverage status of the employee's spouse was not preempted by ERISA because the claim was independent of the "plan's actual obligations under the terms of the insurance policy"); *Variety Children's Hospital v. Blue Cross/Blue Shield*, 942 F. Supp. 562 (S.D. Fla. 1996) (provider's promissory estoppel claim did not relate to ERISA plan thus not preempted by Section 514(a)). Counts II and III are materially different from the cases cited by Plaintiffs. These claims for libel and tortious interference relate directly to the way WellPoint handled and processed its beneficiaries' claims.

Because Plaintiffs' Counts II and III for trade libel and tortious interference are so intertwined with the ERISA plan, the Court finds that these causes of action "relate to" an employee benefit plan, and are thus preempted by ERISA under Section 514(a).

And as we find that Plaintiffs' state law claims are preempted, we will not address the issue of whether the Complaint properly states these causes of action under applicable state law.  These claims should simply be dismissed as preempted.

### C.    *Standing*

Defendants also challenge ADA's standing to assert claims on its own behalf or in representative capacity on behalf of its members.  Defendants assert that ADA is not a "participant" or "beneficiary" of an ERISA plan and does not allege that it received assignments from a "participant" or "beneficiary," thus it lacks individual standing under 29 U.S.C. § 1132(a)(1)(B). Defendants also assert that ADA lacks representative standing because individual issues and individual dentist participation is critical for the adjudication of each claim.  Finally, Defendants point out that ADA has failed to allege a "distinct and palpable injury" required by Article III of the Constitution.

ADA, however, asserts that it has individual standing because it has suffered direct injury-in-fact as a result of WellPoint's alleged conduct.  Specifically, ADA claims that it "spends a substantial amount of time and money working with its members to resolve their outstanding disputes with the insurers." Additionally, ADA claims that it has representative standing to pursue claims on behalf of its members for injunctive and equitable relief.

The "case or controversy" requirement of the Constitution is an important limitation on federal court jurisdiction.  U.S. Const., art. III, § 2.  "To satisfy the case and controversy requirement of Article III, a plaintiff must have suffered some actual injury that can be remedied or redressed by a favorable judicial decision." *National Advertising Co. v. City of Ft. Lauderdale*, 934 F.2d 283, 285-86 (11th Cir. 1991).  This

requirement shields federal courts from being drawn into disputes as to abstract or hypothetical cases, or ones in which purely advisory opinions affecting a dispute are being sought. *E.g., Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937); *Webster v. Reproductive Servs.*, 492 U.S. 490, 500 (1989). At an "irreducible constitutional minimum," Article III standing requires that the plaintiff "have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

An association has standing to bring suit on behalf of its members if (a) its members would otherwise have standing to sue in their own right, (b) the interests it seeks to protect are germane to the association's purpose, and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977). Defendants claim that ADA Plaintiff is unable to meet the third prong of the *Hunt* test.

Defendants' argument is partially correct. The only injury alleged by ADA in the Complaint is that it "spends a substantial amount of time and money working with its members to resolve outstanding disputes, including researching possible remedies and negotiating with insurers." [Class Action Complaint D.E. 2 ¶ 10]. Additionally, ADA alleges that its "representatives have spent literally hundreds of hours reviewing, researching and discussing complaints from its members concerning UCR issues, including reduction in reimbursements by WellPoint based on its improper UCR determinations." *Id.* This, however, is not a concrete injury. Instead, ADA's alleged

actions are purely voluntary whose goal is to assist and help its members.  Thus, we agree that ADA failed to allege direct injury to confer  standing to bring claims in its own capacity.  Furthermore, as the only remaining claim should be an ERISA claim, ADA lacks standing to bring such a claim, at least for damages, because it is neither a participant nor a beneficiary under the contested plan.  29 U.S.C. § 1132(a)(1)(B).

But, as the Supreme Court has held, individual participation by an association's members may be unnecessary when the relief sought is prospective in nature, such as an injunction or declaratory judgment, as opposed to monetary damages that would require more individualized proof of both the fact and extent of injury of each individual member's claim.  *Int'l Union, United Auto. Workers v. Brock*, 477 U.S. 274, 287-88 (1988).   Therefore, the Court should allow ADA to proceed with its representation of its particular members who possess a valid assignment of claims from their beneficiaries insofar as it relates to claims for injunctive and declaratory relief only.

### D.     *Rule 8(a)(2) Challenge*

Finally, Defendants contend that the entire Complaint should be dismissed because Plaintiffs have failed to plead facts in sufficient detail to comply with Fed. R. Civ. P. 8(a)(2).  Citing *Response Oncology, Inc. v. The MetraHealth Ins. Co.*, 978 F. Supp. 1052 (S.D. Fla. 1997), Defendants assert that the ERISA claim fails to provide the most basic information necessary to establish such a claim.  Specifically, Defendants contend that the Complaint fails to identify the ERISA plans to which the patients allegedly belonged to or the relationship between WellPoint and the applicable ERISA plans.

Fed. R. Civ. P. 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). We conclude that Plaintiffs' Complaint meets this standard. Plaintiffs sufficiently identify WellPoint or its subsidiary as the plan administrator. Furthermore, as a class action complaint, Plaintiffs sufficiently allege an ERISA breach of contract challenge to every WellPoint administered plan that utilized Ingenix data in calculating the "usual, customary and reasonable" rate. Clearly, the allegations in the Complaint give fair notice to Defendants about what the nature of the claims are, as well as the grounds upon which Plaintiffs rely.

### III.   CONCLUSION & RECOMMENDATION

In summary, the Court finds that Plaintiffs' Count I ERISA claim sufficiently pleads exhaustion requirement. State law tort claims in Counts II and III, however, should be dismissed due to ERISA preemption. The Court also finds that Plaintiff ADA has standing to proceed on behalf of its members only to seek prospective injunctive relief. Finally, we conclude that the Count I ERISA claim satisfies Fed. R. Civ. P. 8(a)(2) pleading requirement.

For the foregoing reasons, it is hereby recommended as follows:

1.      Defendants' Motion to Dismiss Count I of the Complaint due to failure to exhaust administrative remedies should be **DENIED**.

2.      Defendants' Motion to Dismiss Counts II and III of the Complaint due ERISA preemption should be **GRANTED** and Counts II and III should be **DISMISSED WITH PREJUDICE**.

3.      Defendants' Motion to Dismiss Counts II and III due to failure to state a claim under applicable state law should be **DENIED AS MOOT**.

4.      Defendants' Motion Dismiss Plaintiff American Dental Association's ERISA claim due to lack of standing should be **GRANTED IN PART and DENIED IN PART** as follows:

        a.      ADA lacks standing to assert direct claims on its own behalf.

        b.      ADA has representative standing to assert claims on behalf of its members.

5.      Defendants' Motion to Dismiss the entire Complaint due to failure to comply with Fed. R. Civ. P. 8(a)(2) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of November, 2008.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge