UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Master File No. 00-1334-MD-MORENO
Tag-Along Case No. 02-22027-CIV-MORENO

IN RE: MANAGED CARE LITIGATION
_____,

THE AMERICAN DENTAL ASSOCIATION,
on its own behalf and in an associational
capacity on behalf of its members, and FRANK
S. ARNOLD, D.M.D., DAVID W. RICHARDS,
D.D.C., and JAMES SWANSON, D.D.S.,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

WELLPOINT HEALTH NETWORK INC. and
BLUE CROSS OF CALIFORNIA,

        Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
RENEWED MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies[1] [D.E. 43]. The

---

[1] On April 13, 2010, we issued a Report and Recommendation recommending that Defendants' original motion for summary judgment be granted [D.E. 73]. Subsequently, however, we vacated our Report and Recommendation after the parties alerted the Court that certain outstanding discovery was yet to completed. *See* Order on Motion for Reconsideration [D.E. 86]. Following completion of that discovery, Defendants filed a Notice of Renewal [D.E. 87] to which Plaintiffs responded [D.E. 90].

Court has reviewed the motion, Plaintiffs' response [D.E. 90], the reply [D.E. 91], related authorities submitted by the parties, and the record in the case. For the foregoing reasons the motion for summary judgment should be granted.

## I. BACKGROUND

This is a tag-along case transferred by the MDL panel from the Northern District of Illinois to this Court due to its common questions of law and fact with other cases involved in the *In Re: Managed Care Litigation*. Plaintiffs are three individual dentists plus the American Dental Association ("ADA") that is suing on its own behalf and in an associational capacity on behalf of its members. Defendants, WellPoint Health Networks, Inc. and its subsidiary Blue Cross of California ("WellPoint"), administer group health plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs allege to have provided dental services as "out of network" providers to members of health plans administered by WellPoint and governed by ERISA. These services were performed pursuant to the terms and conditions of the subscriber agreements. Under these agreements, WellPoint was obligated to pay its subscribers or their "out of network" providers the actual amount these providers charged for their services, assuming the annual deductible was met, minus any applicable co-payment amount paid by the subscriber. According to Plaintiffs, the only instance in which WellPoint was excused from paying the actual amount charged by the "out of network" provider was where it demonstrated, using a valid data, that the treating dentist's actual charges "exceed[ed] the customary and reasonable allowance" for the particular

procedure in question. Plaintiffs further allege that WellPoint used and continues to use a flawed and inadequate database developed by Health Insurance Association of America ("HIAA" or "Ingenix") in making its benefits calculation for "out of network" providers under all of its administered plans.

In their three-count Class Action Complaint, Plaintiffs allege that (1) WellPoint violated ERISA by underpaying its subscriber-patients for the services rendered by the "out of network" dentists, and (2) WellPoint's statements to its subscribers regarding the excessive costs of "out of network" services constituted trade libel and tortious interference with contractual relations on the Plaintiff class under state law. Plaintiffs seek monetary damages as well as injunctive and declaratory relief.

On November 6, 2008, we recommended dismissal of all of Plaintiffs' state law claims based on preemption by ERISA [D.E. 36]. Judge Moreno affirmed and adopted our Report and Recommendation [D.E. 52]. Thus, the Complaint's only remaining count is the ERISA breach of contract claim that seeks redress under 29 U.S.C. § 1001 *et seq*.

The pending motion for summary judgment essentially raises only one argument. Namely, Defendants contend that they are entitled to a judgment as a matter of law on the ERISA claim because Plaintiffs failed to exhaust available administrative remedies under their ERISA-governed plans before they filed the instant lawsuit. Defendants claim that, contrary to the conclusory allegations outlined in the Complaint, undisputed record evidence now demonstrates that Plaintiffs never appealed the claim determination that is subject of this lawsuit.

Plaintiffs oppose the motion, responding that: (1) genuine issues of material fact remain as to whether WellPoint's plan required any appeal; (2) genuine issues of material fact remain as to whether one of the Plaintiffs, Doctor David W. Richards, exhausted WellPoint's single level of appeal; (3) Dr Richards' appeal would be futile in light of the fact that WellPoint's internal procedures could not grant the relief sought by him; (4) WellPoint's handling of Dr. Richards' letter demonstrated futility; and (5) Defendants' failure to comply with ERISA regulations with respect to notice of a claim denial raises a genuine issue of material fact as to wether exhaustion must be deemed excused.

## II.   ANALYSIS

### A.   *Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden is met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific

facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

### B.     *ERISA's Exhaustion Requirement*

Count I of the Complaint alleges breach of contract and seeks redress under ERISA, 29 U.S.C. § 1001 *et seq*. ERISA requires plaintiffs to exhaust available administrative remedies under their ERISA-governed plans before they are allowed to bring suit in a federal court. *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992); *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990). This requirement, however, may be excused if the court determines that exhaustion would be futile or the remedy offered would be inadequate. *Springer*, 908 F.2d at 899. The decision whether an exception should be applied to the exhaustion requirement is committed to the sound discretion of the trial court and will not be overturned absent abuse of discretion. *Id.*

The Complaint here alleges that Dr. Richards, one of the plaintiffs in this case, "appealed WellPoint's reduction of reimbursements" and "requested all back-up or supporting documentation." *See* Class Action Complaint ¶ 29 [D.E. 2]. WellPoint, however, refused to provide such documents and informed Dr. Richards that "payments are made in accordance with the HIAA fee schedule." *Id*. Furthermore, WellPoint did not instruct Dr. Richards to follow any additional appeals procedure, other than

referring him to its customer service department's 800 number. Based on these allegations, Plaintiffs concluded that "Dr. Richards has exhausted all potential internal procedures and grievance mechanisms." *Id.* Contrary to the allegations listed in the Complaint, however, undisputed evidence now shows that Dr. Richards never formally appealed WellPoint's decision and the exhaustion requirement should not be excused.

### *1. Facts*

The following facts are undisputed. Dr. Richards is a periodontist in San Diego, California, where he operated his practice for over 20 years. Because he did not enter into a contract with WellPoint to provide services to its subscribers at a predetermined contractual rate, he is an "out-of-network" provider with respect to WellPoint. In about September 2001, Dr. Richards saw a WellPoint subscriber for a comprehensive exam, for which he charged $98. Of the charged amount, however, WellPoint reimbursed only $57 because the original charge exceeded "the customary and reasonable allowance for [such] procedure." *See* Explanation of Benefits, Ex. B to Decl. of Barbara Chipres [D.E. 43-2].

Subsequently, on November 9, 2001, Dr. Richards sent the following letter to WellPoint:

> I recently received payment and an explanation of benefits from Well Point for the services we provided to one of your subscribers [N.B.].[2] As I am not a preferred provider for WellPoint the procedure was billed based on our regular fee schedule. WellPoint, however, made payment on a reduced fee stating that the billed fee exceeded the "customary and reasonable allowance for the provided procedure." Please provide me

---

[2] For the purpose of complying with the privacy provisions of the Health Insurance Portability and Accountability Act, the subscriber's name and social security was redacted from Defendants' publicly court-filed documents.

> with documentation of the data used to calculate WellPoint's UCR as this reduction places my office in a difficult situation with regards to the patient.

*See* Dr. Richards' Letter to WellPoint. Ex. A to Decl. of Barbara Chipres [D.E. 43-2].

On December 1, 2001, WellPoint responded to Dr. Richards' Letter with the following correspondence:

> Dear Dr. Richards:
>
> Your request for additional information regarding the determination of usual, customary, and reasonable (UCR) has been refereed [sic] to me.
>
> Please be advised that payments are made in accordance with the HIAA fee schedule. We use data received from Ingenix, which is updated once a year and is based on actual claims data received from numerous insurance companies, and is calculated based on the provider's zip codes. We hope this clarifies the situation.
>
> If you have any questions, please do not hesitate to contact our Customer Service Department at (800) 627-0004.

*See* Response to Dr. Richards' Letter. Ex. B to Decl. of Barbara Chipres [D.E. 43-2]. There was no further communication or an attempt of communication between Dr. Richards and WellPoint.

The applicable health care plan identified in Dr. Richards' letter contained the following:

> If your claim is denied in whole or in part, you will receive a written notice of the adverse benefit determination within the time frame stated above, or after Blue Cross/BC Life has all the information they need to process your claim, if the information is received within the time frame noted above. The written notice will explain the reason for the adverse benefit determination and the plan provisions upon which the denial decision is based. *You have 180-days to appeal their decision. Your appeal must be in writing.* Within 60-days after they receive your appeal, they must notify you of their decision about it. Their notice to you or their decision will be in writing.

> Note: You, your beneficiary, or duly authorized representative may appeal any denial of a claim for benefits with Blue Cross/BC Life and request a review of a denial. In connection with such a request:
>
> *   Documents pertinent to the administration of the Plan may be reviewed free of charge; and
>
> *   Issues outlining the basis of the appeal may be submitted.

*See* Prudent Buyer Choice Dental Plan at 109, Ex. C to Decl. of Barbara Chipres [D.E. 43-2] (emphasis added).

### 2.  *Appeal Requirement*

The Plan clearly required Dr. Richards to appeal in writing within 180 days of the September 2001 EOB. Plaintiffs, however, contend that the term "may file" in the "note" paragraph of the Plan renders the need of an appeal merely precatory rather than mandatory. Plaintiffs' argument has no merit.

The language quoted by Plaintiffs describes the individuals who may submit an appeal: "[y]ou, your beneficiary or a duly authorized representative may appeal any denial of a claim for benefits." In other words, the quoted language merely recognizes the appropriate appellant for an adverse benefit determination.

Plaintiffs' reliance on *Watts v. Bellsouth Telecommunications, Inc.*, 316 F.3d 1203 (11th Cir. 2003), is misplaced. In *Watts*, the Eleventh Circuit recognized a narrow exception to the exhaustion doctrine where plan description documents lead the claimant reasonably to conclude that exhaustion is not necessary. *Id.* at 1209. The plan language in *Watts*, however, expressly stated that a claimant "may file a suit in state or federal court" if his or her claim is denied or ignored. *Id.* Such language, that is at odds with the mandatory appeal requirement found in other sections of a plan, is

not present here. Thus, the exception outlined in *Watts* in not applicable here.

### 3. *Plaintiffs' Failure to Appeal*

After reviewing the record once again, we conclude that, as a matter of law, Dr. Richards' November 2001 letter did not constitute an appeal of Defendants' fee reduction for the treatment he rendered to one of their subscribers. In the letter, Dr. Richards merely restated WellPoint's basis for the discounted reimbursement, namely, that his charge exceeded the "customary and reasonable allowance for the provided procedure," and asked to review the "documentation of the data used to calculate WellPoint's UCR." In no way, however, did the letter indicate that Dr. Richards wished to appeal or challenge the determination.

Black's Law Dictionary defines the verb "to appeal" as "to seek review" of something. *See* Black's Law Dictionary 94 (7th ed. 1999). Thus, in order to be considered an "appeal," Dr. Richards' letter had to convey a demand for a review and an affirmative challenge to Defendants of their decision to reduce the payment due to him. At most, the letter expressed Dr. Richards' dissatisfaction with the reduced payment, and his request for documents possibly indicated the intent to appeal in the future. *See, e.g., Holmes v. Proctor and Gamble Disability Benefit Plan*, 228 Fed. Appx. 377, 379 (5th Cir. 2007) (request of plaintiff's personnel file showed intent to appeal in the future but did not constitute an appeal in and of itself).

Plaintiffs are correct that exhaustion is not only satisfied when documents contain certain "magic language." Contrary to the facts here, however, the cases cited by Plaintiffs uniformly hold that a plaintiff must communicate that he disputes the claim determination and seeks its review. *See, e.g., Long v. Houston Lighting & Power*

*Co.*, 902 F. Supp. 130, 131 (S.D. Tex. 1995) (letter gave "notice of the Plaintiffs' claim under various state statutes, and threaten[ed] to sue if the matter was not resolved"); *Evans v. SwedishAmerican Corp.*, No. 93 C 20131, 1993 WL 487538, at *5 (N.D. Ill. Nov. 15, 1993) ("very first line of [the plaintiff's] letter states, 'I am appealing the decision for denial of payment of medical treatment'"); *Hager v. NationsBank, N.A.*, 167 F.3d 245, 247 (5th Cir. 1999) (plaintiff's letter "made a demand for review of the benefits determination, claiming that the amount of benefits stated [she was being paid] understated the amount NationsBank originally informed her she would receive").

Instead, as previously stated, the November 2001 letter was clearly only a request for information and merely expressed Dr. Richards' dissatisfaction with the discounted payment. *See, e.g., Newton v. Barish Chrysler-Plymouth Medical Plan*, No. 93-55575, 1994 WL 650013, at *2 (9th Cir. Nov. 15, 1994) ("letter was a mere request for information and a rattling of sabers - it does not even outline the nature of [plaintiff's] complaint."); *Borland v. Quest Corp.*, 178 Fed. Appx. 629, 630 (9th Cir. 2006) (plaintiff's letter to company failed to constitute an appeal because among other things it "did not specify that [plaintiff] wished to appeal"); *Powell v. AT & T Communications, Inc.*, 938 F.2d 823, 825 (7th Cir. 1991) (where letter from the plaintiff's attorney questioned the legality of the plaintiff's termination from employment and also inquired into the "availability of any other forms of disability benefits," letter was not a sufficient request for review and therefore did not satisfy exhaustion requirement.); *Pierce v. United Rentals, Inc.*, No. 3:01-CV-0995-K, 2003 WL 22289882, at *3 (N.D. Tex. Aug. 28, 2003) (a demand letter that did not request an

appeal did not constitute an appeal); *Tilton v. Wal-Mart Stores, Inc.*, No. CIV. A. 98-2801, 1999 WL 307606, at *2 (E.D. La. May 13, 1999) (same).

In order to overcome the shortcomings associated with Dr. Richards' letter, Plaintiffs cite to WellPoint's various internal policies and procedures. Plaintiffs contend that "the dissatisfaction" expressed in Dr. Richards' letter was consistent with WellPoint's own definition of an appeal. However, as Defendant correctly points out, WellPoint's internal policies are irrelevant and have no bearing on the issue of whether Dr. Richards' letter constituted an appeal. Instead, the relevant inquiry is whether plaintiff's communication to the defendant on its face constituted an ERISA appeal as a matter of law. Likewise, the WellPoint post office box address to which Dr. Richards sent his letter is also irrelevant because, as outlined above, the contents of the letter did not constitute an appeal.

### *4. Plaintiffs' Failure to Appeal is not Excused*

Next, Plaintiffs argue that the failure to appeal should be excused because genuine issues of material fact exist as to whether an appeal would be futile. Plaintiffs once again cite to WellPoint's internal procedures. They argue that these procedures and policies could not grant the relief sought by Dr. Richards, i.e. disclosure of the database utilized by WellPoint in determining the "usual, customary and reasonable" rates. Plaintiffs also argue that WellPoint's handling of Dr. Richards' letter also demonstrated the futility of, or otherwise frustrated or excused exhaustion. Once again, however, Plaintiffs' arguments are unconvincing.

The law in the Eleventh Circuit is clear that futility cannot be established by presuming that the outcome of the appeal would be adverse on the merits. Instead, "in

this Circuit, courts have consistently equated the concept of futility with the inability of a litigant to present his or her claim for administrative review and to have that claim considered, without reference to the probable outcome of the administrator's review." *Spivey v. Southern Co.*, 427 F. Supp. 2d 1144, 1155 (N.D. Ga. 2006) (citing *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000)); *see also In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1295 (S.D. Fla. 2003) (rejecting futility argument where plaintiffs failed to allege that their "actual *efforts* at obtaining administrative review have been somehow blocked or impeded by Defendants") (emphasis in original). In other words, "[t]he concept of futility, as it has been developed in the Eleventh Circuit, does not depend upon the likely outcome of the administrative review. Rather, the concept of futility has been equated with a *plaintiff's inability to present a claim for administrative review."* *Claxton v. Conn. Gen. Life Ins. Co.*, 109-087, 2010 WL 1169733, at *7 (S.D. Ga. Mar. 24, 2010) (emphasis added).

Plaintiffs do not claim, and there is no evidence on record, that Dr. Richards was prevented from submitting an appeal. Instead, Plaintiffs merely argue that Defendant's response letter establishes futility because "WellPoint was not in a position to reveal the documentation [Dr. Richards requested] . . . because that information was claimed to be proprietary." Plaintiffs' argument misses the target, however, because in the cases where exhaustion has been "excused due to the failure of the defendant to provide certain documentation, the request for documentation was made *after* an appeal was made. *See Spectrum Health, Inc. v. Good Samaritan Employers Assoc. Inc.*, No. 1:08-CV-182, 2008 WL 5216025, at *4 (W.D. Mich. Dec. 11,

2008) ("Spectrum requested 'a printout containing charges of the other providers against which [Spectrum] was compared' in its second letter of appeal.") (emphasis added); *Denning v. Strategic Out-Sourcing, Inc.*, No. 2:03 CV 431-T, 2005 WL 4056647, at *5 (M.D. Ala. Jan. 5, 2005) (communication to plan stated that the plaintiffs "were not accepting the denial" of their claims); *Engelhardt v. Paul Revere Life Ins. Co.*, 77 F. Supp. 2d 1226, 1233 (M.D. Ala. 1999) (plaintiff filed, then abandoned administrative appeal, but exhaustion requirement satisfied where plan nonetheless considered and denied appeal). Here, as we previously explained, Dr. Richards never appealed his claim. Therefore, an inquiry into WellPoint's internal policies and speculation as to whether the potential relief sought by Dr. Richards was available would be improper and contrary to law in this Circuit.

Finally, Plaintiffs argue that Defendants' failure to advise Dr. Richards of the appellate process in the EOB excuses them from the exhaustion requirement. Namely, relying on *HCA Health Servs. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001), Plaintiffs contend that a deficiently detailed EOB results in any exhaustion requirement being excused. We disagree.

The court in *HCA* found that plaintiff had appealed the claim. The court then refused to accept the defendant's argument that the appeal was untimely because it found that the Explanation of Remittance (equivalent to an EOB) failed to explain the manner by which the defendant adjusted the claim. *Id.* at 992. As a result, the court concluded that the EOR did not contain sufficient information to constitute a "written notice of denial" as was required under the applicable plan. *Id.* Having concluded that the plaintiff's appeal was indeed timely, the *HCA* court then found that the defendant's

failure to respond within the required sixty-day period was an implicit denial of the appeal. *Id*.

Contrary to Plaintiffs' reading of the case, however, the *HCA* decision does not broadly hold that exhaustion is categorically excused every time the EOB is somehow deficient. More importantly, unlike *HCA*, here Dr. Richards never appealed the payment reduction despite being instructed to do so under the terms of the applicable plan. *HCA* is, therefore, not applicable and cannot prevent summary judgment on the exhaustion requirement.

### III.  CONCLUSION & RECOMMENDATION

Based upon a thorough review of the record as a whole and the arguments presented by the parties in their motions, it is hereby **RECOMMENDED** that Defendants' Renewed Motion for Summary Judgment Based on Failure to Exhaust Administrative Remedies [D.E. 43] should be **GRANTED** and a summary judgment should be entered in favor of Defendants on Count I of the Complaint.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. §

636(b)(1).

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of January, 2011.

                                                    */s/ Edwin G. Torres*
                                                    EDWIN G. TORRES
                                                    United States Magistrate Judge